UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 13-63536-fra13 |
| LISA M. HOLIFIELD, ) | |
| ) | MEMORANDUM |
| Debtor. ) | OPINION |

### FACTS

In 2007, Debtor retained Mr. Gordon Dick to provide representation in a legal matter and agreed to pay for such services pursuant to a personal services contract. Unable to pay the amount when due, Debtor executed a promissory note in favor of Mr. Dick in July, 2009, secured by a second priority consensual lien against Debtor's residence in Albany. Debtor was unable to pay the promissory note when due in July, 2011 and a final demand for payment of the note was eventually made in April, 2013. On May 23, 2013, the Debtor executed a bargain and sale deed by which she transferred a one-half interest in her real property to her son and recorded the transfer with the county. In July, 2013, Mr. Dick filed a legal action with the Linn County Circuit Court to foreclose his interest in the real property

Debtor filed for bankruptcy protection under chapter 13 on September 11, 2013. Her real property was scheduled as having a fair market value of $446,500, and subject to a first lien held by Washington Federal Savings in the amount of $57,029 and a second lien in favor of Mr. Dick in the approximate amount of $40,000. The only other debts scheduled were unsecured nonpriority debts in the approximate amount of $4,000.

Page 1 -  MEMORANDUM OPINION

A Plan of Reorganization (Plan) was filed with a monthly plan payment of $100,[1] from which the Trustee would pay Mr. Dick and Washington Federal Savings the amount of $40 each. Monthly mortgage payments to Washington Federal Savings would be paid directly, outside of the Plan.[2] The Plan also provided that the Debtor would sell or refinance the real property by August, 2016, with proceeds at closing paid to the Trustee in an amount sufficient to pay all creditors secured in the property and an amount required to pay off the Plan. Because of Debtor's equity in the real property, that would require full payment to unsecured creditors.

Objections to confirmation were filed by the Trustee (dkt. #14) and by Mr. Dick (dkt. #20). Mr. Dick objected to the interest rate on his claim being reduced to 3.25%, to the lack of equal monthly payments,[3] and on grounds of lack of good faith. The Trustee objected on grounds that Debtor had failed to provide him with proof of income and copies of tax returns. An initial confirmation hearing was held on November 13, 2014 (dkt. #27). The parties advised the Court that the objections remained unresolved, and the matter was continued to January 28. Thereafter, the Debtor wrote to the Court to advise that a settlement had been reached with Mr. Dick. Debtor suggested that the settlement could be effectuated with an Order Conforming the Plan, ("OCP") modifying the plan to conform to the agreement, and requested that the Janaury 29 hearing be taken off the calendar. Notwithstanding Debtor's request, a short hearing was held on January 29. The Trustee objected to the proposed OCP, and the Court took the matter under advisement.[4]

---

[1] Schedules I and J show monthly income of $1,945 and expenses of $1,845, leaving monthly net disposable income of $100.

[2] It is unclear as to why an extra $40 per month is to be paid to Washington Federal Savings, as the Plan does not show a pre-petition arrearage owed to that creditor.

[3] A balloon payment after smaller monthly payments is not allowed under 11 U.S.C. § 1325(a)(5)(B)(iii)(I) pursuant to *In re Bollinger*, 10-62344-fra13, 2011 WL 3882275 (Bankr. D. Or. 9/2/2011).

[4] A copy of the proposed order is appended hereto.

Page 2 - MEMORANDUM OPINION

Under the proposed OCP, Debtor would partly subdivide her real property and sell parcels of the subdivided property in order to pay Mr. Dick's claim.[5] The Plan, as modified by the OCP, provides that if the secured claim of Mr. Dick is not paid within 12 months of the entry of the OCP, the Debtor would undertake to refinance her personal residence to pay off Mr. Dicks's claim. If Mr. Dick's claim has not been paid off within 24 months, the Debtor will list her property for sale and Mr. Dick's claim must be paid in full within 36 months of the entry of the OCP. Debtor's attorney stated that an order confirming plan (OCP) had been submitted to the Trustee containing the changes agreed to between the Debtor and Mr. Dick. The Trustee objected to the provision in the OCP whereby the Debtor's real property would remain property of the estate post-confirmation.[6] The Court took the matter of confirmation under advisement, allowing the Debtor to file a post-hearing memorandum in support and the Trustee to file a response.

DISCUSSION

The Trustee specifically objects to ¶ 19 added to the OCP:

> New ¶ 19: Pursuant to Section 1328(b), entry of the Order Confirming Plan shall vest all of the property of the estate in the Debtor except for the personal residence located at 3268 Millersburg Dr., NE, Albany, OR 97321. Debtor is authorized to use the personal residence subject to Paragraph 2 of the Order Confirming Plan. The Debtor shall maintain insurance on the property sufficient to protect against loss. Notwithstanding the personal residence remaining as property of the estate, the Debtor shall be responsible for the personal residence; the Trustee shall have no liability for maintenance of the personal residence or payment of encumbrances except as provided in Paragraph 2 of the Plan (as modified by the Order Confirming Plan). As property of the estate, the personal residence maintains the protections of the automatic stay (11 U.S.C. § 362(a)); any creditor seeking to encumber the personal residence must obtain approval from the Court.

Debtor states that "the reason for retaining the Property as property of the estate is so that the Property will enjoy the enhanced protections afforded to such property under Section 362(a)(5), thereby preventing a third-party from obtaining a superior interest to that of Creditor Gordon Dick." Mr. Dick is, apparently,

// // //

---

[5] Ordinarily, absent prior consent by the senior lienholder, any sales of real property would first have to satisfy Washington Federal Savings' lien before payments could be made to Mr. Dick.

[6] 11 U.S.C. § 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

Page 3 - MEMORANDUM OPINION

concerned that a third-party could obtain, during the pendency of the chapter 13 proceeding, a statutory lien under ORS Chapter 87 which would have priority over his lien.

A. Statutory Construction Liens

"The Construction Lien Laws are 'designed to protect laborers and materialmen who expend their labor and materials upon the buildings of others'." *SERA Architects, Inc. v. Klahowya Condominium, LLC,* 253 Or.App. 348, 356, 290 P.3d 881 (2012)(internal citation omitted). As far back as 1864, the Oregon legislature has granted construction liens priority over certain other liens. *Id.* Statutory construction liens are available to five types of entities under ORS 87.010:

(1) Any person performing labor, furnishing material, or renting equipment used in the construction of an improvement, has a lien upon the improvement.

(2) Any person who engages in or rents equipment for the preparation of a lot or parcel of land has a lien upon the land.

(3) (Not applicable).

(4) Trustees of an employment benefit plan shall have a lien upon the improvement for the amount of contributions due to labor performed on that improvement.

(5) An architect, landscape architect, land surveyor or registered engineer who prepares plans or drawings for the construction of an improvement or supervises the construction shall have a lien on land and structures necessary for the use of the plans or drawings.

(6) A landscape architect, land surveyor or other person who prepares plans, drawings, etc. to be used for landscaping or preparation of the lot or parcel of land or who supervises the landscaping or preparation shall have a lien on the land.

In order to protect his full lien rights, a construction lien claimant must provide notice of the establishment of the lien within a specified period and the lien must be perfected within 75 days of the completion of the project or the date that labor, materials, or equipment was provided, depending on the nature of the lien claimant. ORS 87.035. Any perfected lien on the land under sections (2) or (6) of ORS 87.010 has priority over any perfected lien or encumbrance attaching to the land <u>after</u> the time of the commencement of the improvement. ORS 87.012(1). A perfected construction lien on an <u>improvement</u> under sections (1), (4), or (5) will have priority over all prior liens or encumbrances on the land upon which

// // //

Page 4 - MEMORANDUM OPINION

the improvement was constructed. In order to enforce such lien, the improvement may be sold separately from the land. ORS 87.025(2).

If the Debtor's land is subdivided into lots to be developed, any construction liens attaching to the land would be junior to Mr. Dick's lien. Even if Debtor intended to build houses on or otherwise partially develop the subdivided lots,[7] any construction liens would attach to the improvements so constructed and have priority over Mr. Dick's lien <u>on the improvements</u>, (his lien on the real property may extend to those newly-constructed improvements), but his lien and other prior liens on the <u>land</u> on which the improvements were made would not be affected. Mr. Dick's lien would retain its priority in the Debtor's personal residence and land.

B. Good Faith Requirement

In order to confirm a chapter 13 plan, 11 U.S.C. § 1325[8] requires the following:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) *the plan has been proposed in good faith* and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
....

(emphasis added).

The Ninth Circuit in *In re Goeb*, 675 F.2d 1386 (9th Cir. 1982) concluded that "the proper inquiry [with regard to good faith] is whether the [debtors] acted equitably in proposing their Chapter 13 plan" and

---

[7] There has been no indication that Debtor intends to develop the subdivided lots, or that she has the wherewithal, financial or otherwise, to do so.

[8] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

Page 5 - MEMORANDUM OPINION

that the inquiry should focus on "whether the debtor ha[d] misrepresented facts in the plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." "[T]he court must make its good-faith determination in the light of all militating factors . . . and should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan." *Id.* at 1390.

The Ninth Circuit further added to the list of elements which a bankruptcy court should include in its good-faith analysis. In addition to the factors provided in *Goeb*, the court should also consider 1) the debtor's history of bankruptcy filings, 2) whether the debtor intended to frustrate collection of a state-court judgment, and 3) whether "egregious" behavior is present." *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1132 (9th Cir. 2013)(citing *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999)). Ensuring good faith treatment of future, as well as existing, creditors is essential, because "[u]nlike the pre-petition creditors, the post-petition creditor has no opportunity to object to confirmation of the plan. *In re Mason*, 45 B.R. 498, 501 (Bankr. D. Or. 1984), *aff'd,* 51 B.R. 548 (D. Or. 1985).

Unless otherwise provided in the Plan or OCP, title to all property of the estate vests in the Debtor upon confirmation free of the claims of pre-petition creditors. § 1327(b). Disposition or use of the property ceases to be controlled by the court, except to the extent provided in the Plan or OCP.[9] "Post-confirmation creditors may deal with the debtor as if no bankruptcy case were pending." *In re Mason*, 45 B.R. at 501.

> During the period prior to confirmation, the property owned by the debtor at the time of commencement of the case and property acquired thereafter is given status of property of the estate in order to protect the property from action by both pre and post-petition creditors. This gives the debtor an opportunity to propose a plan and obtain confirmation. All pre-confirmation creditors are provided for in the plan. In order to obtain confirmation, the debtor must assure the court, and the court must find, that the plan is feasible. 11 U.S.C.

---

[9] Paragraph 2 of the standard OCP used in this district provides that the "debtor shall not buy, sell, use, lease (other than a lease of real property in which the debtor will reside), encumber or otherwise dispose of any interest in: (a) real property; or (b) personal property with a value exceeding $10,000 outside the ordinary course of business without notice to all creditors and the trustee, with an opportunity for hearing unless such property is acquired through the use of credit and the trustee's permission is obtained . . . ."

Page 6 - MEMORANDUM OPINION

§1129(a)(11) and § 1325(a)(6). In other words, the debtor has represented that there will be no need for protection of the court from actions by post-confirmation creditors.

*Id.* at 501.

By proposing to have the Debtor's real property remain as property of the estate post-confirmation, Debtor aims to prevent post-confirmation creditors from protecting their claims through the use of a statutory construction lien under Oregon law. The unpaid claims for labor or materials would have been incurred in providing value to Debtor's real property, and the pre-petition claimant, whose prior lien on the property is the intended beneficiary of such action, would in reality be no more secure than if the real property were allowed to re-vest in the Debtor. The Court finds that this treatment of possible post-confirmation creditors in depriving them of protections under state law is not equitable and falls short of the good faith standard of § 1325(a)(3).

Debtor argues that any post-confirmation creditors could obtain a title report which would disclose the pending bankruptcy case and further research would reveal ¶ 19 of the OCP, which would alert them to the fact that the automatic stay remained in effect with respect to the real property. This does not advance her case: if a potential contractor is made aware that his statutory lien rights will not be available, he may reasonably decline to work for the Debtor, or insist on other security.

C. Procedural Considerations

The treatment of the bankruptcy estate's property and the proposed distribution on sale or refinance and the numerous other changes made by the OCP constitute a material change from the Plan as filed. See § 1323. The proper procedure is to file and serve a pre-confirmation amended plan on interested parties, as required by § 1323(b), Fed.R.Bankr.P 3015(d), and LBR 3015-2(b).[10] Attempting to make the modifications

// // //

---

[10] LBR 3015-2 provides: **(b) Preconfirmation.** If a proposed amendment is filed 14 days or more before a confirmation hearing, the debtor must attach the amended plan to LBF #1355.05 and serve it under that form. If an amended plan is filed less than 14 days before a confirmation hearing, the court will determine at the hearing whether the debtor must comply with the preceding sentence.

Page 7 - MEMORANDUM OPINION

proposed here by way of an OCP presented *ex parte* without notice to interested parties (other than the Trustee) does not comply with these requirements, or fundamental standards of due process.

## CONCLUSION

Because the Plan as modified by the OCP does not meet the good faith standards of § 1325, it cannot be confirmed. An order will be entered by the Court denying confirmation without prejudice and providing Debtor 21 days to file an amended plan, which must be noticed to interested parties.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re ) Case No. **13-63536-fra13**
)
**Lisa Marie Holifield** ) CONFIRMATION HEARING DATE: **January 28, 2014**
)
) **ORDER CONFIRMING CHAPTER 13**
Debtor(s) ) **PLAN AND RESOLVING MOTIONS**

     The debtor's plan having been provided to creditors and the Court having found that it complies with 11 U.S.C. §1325, now, therefore IT IS ORDERED:

1.     The debtor's plan dated **09/19/2013**, as modified by any amendment shown in ¶11, is confirmed.

2.     The debtor shall incur no credit or debt obligations during the life of the plan without the trustee's written consent unless made necessary by emergency or incurred in the ordinary course of operating the debtor's business. Unless waived by the trustee in writing, the debtor shall report immediately, upon receipt of notice of the change, to the trustee if actual or projected gross annual income exceeds by more than 10% the gross income projected by the debtor in the most recently filed Schedule I. Except for those amounts listed in the schedules, the debtor shall report immediately to the trustee any right of the debtor or debtor's spouse to a distribution of funds (other than regular monthly income) or other property which exceeds a value of $2,500.00. This includes the right to disbursements from any source, including, but not limited to, bonuses and inheritances. Any such funds to which the debtor becomes entitled shall be held by the debtor and not used without the trustee's permission, or, if such permission is not obtained, a court order. The debtor shall not buy, sell, use, lease (other than a lease of real property in which the debtor will reside), encumber or otherwise dispose of any interest in: (a) real property; or (b) personal property with a value exceeding $10,000.00 outside the ordinary course of business without notice to all creditors and the trustee, with an opportunity for hearing unless such property is acquired through the use of credit and the trustee's permission is obtained pursuant to the first sentence of this paragraph.

3.     During the life of the plan, the debtor(s) shall timely file all required tax returns and provide copies of all tax returns to the trustee each year immediately upon filing with the taxing authority. The debtor's failure to pay postpetition tax and/or domestic support obligations may constitute cause for dismissal of the debtor's Chapter 13 case under 11 USC §1307(c).

[**Note**: Printed text may not be stricken]

1350.05 (12/1/12) **Page 1 of 4**     \*\*\* SEE NEXT PAGE \*\*\*

    **Exhibit A - Page 1 of 4**

Case 13-63536-fra13   Doc 41   Filed 03/11/14

4. ☐ (a) Per the filed *Application for Compensation* (LBF #1305), compensation to debtor's counsel of $<u>**N/A**</u> is approved.
   ■ (b) If Schedule 2(b) was selected, and the fees and expenses as certified at the end of this document are less than those estimated on the filed *Application for Compensation* (LBF #1305), fees and expenses in the amount of $<u>.00</u> are approved.
   A total of $<u>**619.00**</u> has been paid, leaving $<u>**TDB.00**</u> to be paid as funds become available per ¶2(b)(4) of the plan.

5. The value of collateral securing debts due holders of secured claims is fixed at the values stated in the plan or the modifications in ¶11 below, only if a valuation motion(s) was included in the plan and served as required under FRBP 7004, or the allowed amount of the secured claim was fixed by consent of the concerned secured creditor. In all other circumstances, the value of such collateral, if contested, shall be established through the claims process or otherwise, as provided in title 11 or the FRBP. Executory contracts and unexpired leases are assumed or rejected as provided in the plan or the modifications in ¶11 below. The name and service address for each creditor affected by this paragraph are [**Note**: List alphabetically and only one creditor per line]:
   **Gordon Dick, Law Office of Gordon Dick, 242 Church St. NE, Salem, OR 97301**
   **Gordon Dick, c/o Michael E. Knapp, P.C., 2355 State St., Salem, OR 97301**

6. Nothing in the proposed plan or in this order shall be construed to prohibit the trustee from prevailing in any adversary proceedings filed under 11 USC §§544, 545, 547, 548 or 549.

7. (a) Pursuant to 11 USC §522(f)(1)(A) the court hereby avoids the following judicial liens [**Note**: Listed alphabetically and only one creditor per line, include each creditor's name and service address]: **N/A**

   (b) Pursuant to 11 USC §522(f)(1)(B) the court hereby avoids the following non-purchase money liens [**Note**: Listed alphabetically and only one creditor per line, include each creditor's name and service address]: **N/A**

8. The debtor, if operating a business without a tax account, shall open a separate bank account and promptly deposit all sums withheld from employees' wages and all employer payroll taxes, and shall make no disbursements from such account except to pay tax liabilities arising from payment of wages.

9. All payments under the confirmed plan shall be paid no later than 5 years after the date the first payment was due under 11 USC §1326(a)(1). If all payments are not completed by that date, the case may be dismissed.

10. All creditors to which the debtor is surrendering property pursuant to the plan are granted relief from the automatic stay to effect possession and to foreclose.

11. The debtor moves to amend the plan by interlineation as follows, which amendments are allowed and become part of the confirmed plan [**Note**: Listed alphabetically, and only one per line, include the name and a service address for any creditor whose address is not listed in ¶5]:
    **¶ 2(b)(1): Strike "Gordon Dick - Personal Residence -  - - $39,856.00 - 3.25% - $40.00"; replace with "Gordon Dick - Personal Residence - n/a - n/a - $40,000 - 6.00% - $40.00, See Paragraphs 16-XX"**
    **¶ 2(b)(4): Strike "5,000.00", replace with "$11,021.05; strike "4,381.00", replace with "$10,402.05"**
    **¶ 2(b)(4): Check box prior to "From all available funds after pt. 2(b) payments are made"; uncheck box prior to "Other".**
    **¶ 2(f)(1): Uncheck box; strike "99%", replace with "n/a"**
    **¶ 2(f)(2): Check box; insert "100%"**
    **¶ 2(g): Strike "254,785.00"; replace with "$6,000.00"**
    **¶ 2(h): Strike "0"; replace with "1"**

[**Note**: Printed text may not be stricken]

**¶ 4:** After "personal residence", insert "located at 3268 Millersburg Dr., NE, Albany, OR 97321"

**¶ 16:** Strike Paragraph in its entirety.

**New ¶ 16:** If the Allowed Secured Claim of Gordon Dick has not been paid within twelve (12) months of the entry of the Order Confirming Plan, the Debtor shall undertake to refinance her personal residence and shall pay to the Trustee from the proceeds at closing, funds sufficient to pay the Allowed Secured Claim of Gordon Dick. Debtor shall also pay to the Trustee for distribution through the Plan, non-exempt proceeds to the extent required by the Trustee's payoff quote. The Debtor shall obtain Court approval prior to any refinance. If accommodation parties are required in any refinance of the property, Debtor shall obtain Court approval; Gordon Dick shall not oppose such request provided that any such accommodation parties acknowledge the superiority of the encumbrances, memorialize the same as reasonably requested by Gordon Dick, and provide a reasonable mechanism to allow for removal of accommodation party if refinance is unsuccessful.

**New ¶ 17:** If the Allowed Secured Claim of Gordon Dick has not been paid within twenty-four (24) months of the entry of the Order Confirming Plan, the Debtor shall list the personal residence for sale. Upon sale, the Debtor shall pay to the Trustee from the proceeds at closing, funds sufficient to pay the Allowed Secured Claim of Gordon Dick. Debtor shall also pay to the Trustee for distribution through the Plan, non-exempt proceeds to the extent required by the Trustee's payoff quote. The Debtor shall obtain Court approval prior to any sale. Upon listing, any offers received by Debtor or Debtor's agent(s) shall be provided to Gordon Dick and any party requesting notice.

**New ¶ 18:** The Allowed Secured Claim of Gordon Dick shall be paid not later than the thirty-sixth (36th) month after the entry of the Order Confirming Plan.

**New ¶ 19:** Pursuant to Section 1327(b), entry of the Order Confirming Plan shall vest all of the property of the estate in the Debtor except for the personal residence located at 3268 Millersburg Dr., NE, Albany, OR 97321. Debtor is authorized to use the personal residence subject to Paragraph 2 of the Order Confirming Plan. The Debtor shall maintain insurance on the property sufficient to protect against loss. Notwithstanding the personal residence remaining as property of the estate, the Debtor shall be responsible for the personal residence; the Trustee shall have no liability for maintenance of the personal residence or payment of encumbrances except as provided in Paragraph 2 of the Plan (as modified by the Order Confirming Plan). As property of the estate, the personal residence maintains the protections of the automatic stay (11 U.S.C. § 362(a)); any creditor seeking to encumber the personal residence must obtain approval from the Court.

**New ¶ 20:** Within six (6) months of the entry of the Order Confirming Plan and each six (6) months thereafter, Debtor shall provide to Gordon Dick and any party requesting notice, an update on the Debtor's progress towards performance of the Plan, specifically Paragraphs 16, 17, and 18, as applicable.

**New ¶ 21:** Creditor Gordon Dick and Debtor agree to reasonably cooperate to effectuate subdivision of the personal residence, refinance of the personal residence and/or subdivided lots, and/or sale of the personal residence and/or subdivided lots.

**New ¶ 22:** Creditor Gordon Dick and Debtor agree that the Allowed Secured Claim of Gordon Dick shall be the amount of $40,000; the remainder of the Claim shall be disallowed.

12. Creditors with prepetition claims excepted from the debtor(s)' discharge are enjoined from initiating any collection actions again the debtor(s) until this case is closed, dismissed, or converted to another chapter under title 11, unless they obtain relief from this order.

13. The terms of this order are subject to any objection filed within 15 days by [**Note**: Listed alphabetically, and only one per line, include the name AND a service address for any creditor whose address is not listed in ¶¶5, 7 or 11]: **N/A**

14. The trustee is authorized to commence disbursements in accordance with the plan.

[**Note**: Printed text may not be stricken]

15. In the event this case is converted to Chapter 7, and the Chapter 13 trustee possesses funds aggregating more than $2,500.00 at the time of conversion, the Chapter 13 trustee shall forward all such funds to the debtor, in care of the debtor's attorney, if any, 10 days after the first scheduled §341(a) meeting in the Chapter 7 case unless, prior to that date, the Chapter 7 trustee files and serves a written objection pursuant to 11 USC §348(f)(2). In the event the funds in the trustee's possession at such time aggregate $2,500.00 or less, or in the event this case is dismissed, the Chapter 13 trustee shall forward all funds in the trustee's possession to the debtor in care of the debtor's attorney, if any. Nothing in this paragraph is to be construed as a determination of the rights of the parties to such funds.

16. All mortgage creditors are granted relief from the automatic stay and co-debtor stay to negotiate with the debtor and co-debtor regarding modification of the underlying loan agreements, providing that any modification must receive the written consent of the trustee or be approved by order of the Court in order to become effective. Negotiations with represented debtors must be with the debtor's counsel who may consent to the creditor communicating directly with the debtor.

###

*I certify that on  01/27/2013  I served this Order on the trustee for submission to the court.*

[To be completed if Debtor's Attorney elected to be paid per Schedule 2(b) on LBF #1305.] *I further certify under penalty of perjury that, through 01/31/2014, I have incurred hourly fees of $10,796.25, and expenses of $224.80, for a total of $11,021.05. A total of $619.00 has been paid to me for the fees and expenses, leaving $10,402.05 to be paid through the plan. I have contemporaneous time records and will provide an itemization of my fees and expenses to the Court or any party in interest in this case upon request.*

/s/  Christopher  N.  Coyle
Debtor or Debtor's Attorney

Approved: _____
                Trustee

[**Note**: Printed text may not be stricken]

1350.05 (12/1/12) **Page 4 of 4**

Exhibit A - Page 4 of 4

Case 13-63536-fra13    Doc 41    Filed 03/11/14